**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 21, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————————

ANITA JEAN HAYES; SALINDA
EVE HAYES,

　　　Plaintiffs - Appellants,

v.

SCOTT OWEN, in his official
capacity; MICHAEL KITCHENS;
B. UNDERWOOD; J. CUTLER;
J. INMAN; SUMMER SONG DAVIS;
PATRICK JOSEPH BALLARD,

　　　Defendants - Appellees.

No. 25-5113
(D.C. Nos. 4:22-CV-00230-JDR-SH,
4:22-CV-00231-JDR-SH,
4:22-CV-00274-JDR-SH, and
4:22-CV-00275-JDR-SH)
(N.D. Okla.)

———————————————————

**ORDER AND JUDGMENT\***

———————————————————

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.

———————————————————

———————————————

\* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Anita and Salinda Hayes appeal the district court's entry of summary judgment against their civil rights claims brought under 42 U.S.C. § 1983. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

On January 17, 2021, Deputy Patrick Ballard of the Washington County, Oklahoma, Sherriff's Department helped a woman who said that her landlord had locked her out to enter and retrieve belongings from a house she had rented near Dewey, Oklahoma. Roughly two hours later, Deputy Ballard was dispatched back to the same house when the renter reported to police that someone was at the property threatening her with an axe.

When he arrived, Deputy Ballard found Anita and Salinda Hayes outside the home.[1] Anita was sitting in the passenger seat of their parked car with the car door open, while Salinda stood next to her. Deputy Ballard

---

[1] We will refer to the Hayeses by their first names where needed to avoid confusion and be clear about whom we are referring to.

approached and first asked "What's going on?" Supp. App. 77, Ex. 7 at 4:42.[2]

Salinda asked him to keep farther away while she put on a face mask, presumably due to the Covid-19 pandemic. Deputy Ballard then asked, "Where's the axe?," to which Salinda said "there ain't no axe." *Id.* at 4:49. Deputy Ballard told her, "well, I was told there was an axe, so for my safety I can be as close as I want." *Id.* at 4:52–55. Salinda reiterated, "[t]hese people are full of shit, there's no axe," evidently referring to the renter. *Id.* at 4:50–56.

Salinda then told Deputy Ballard the renter was trespassing. Their conversation became argumentative as they debated whether or not that was true, with Deputy Ballard responding, in part, by asking Salinda, "Where'd you go to legal school?" and to "tell [him] the trespassing statute,"

---

[2] Our description relies on video from Deputy Ballard's body camera, which was made part of the record. *See* Supp. App. at 77. The Hayeses do not dispute the authenticity or accuracy of this recording. They assert, with no supporting authority, that "[i]f video evidence contradicts [their own] characterization of the sequence, the court must still view factual disputes in the light most favorable to the nonmovant." Aplt. Opening Br. at 11. But "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a '*genuine*' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added) (quoting Fed. R. Civ. P. 56(a)). And "when a 'videotape quite clearly contradicts the version of the story told by the non-moving party,' we cannot 'adopt that version of the facts.'" *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1269 (10th Cir. 2022) (brackets omitted) (quoting *Scott,* 550 U.S. at 378, 380).

also sarcastically commenting "you know a lot more than I do," to which Salinda responded, "damn right I do." *Id.* at 4:56–5:11.

After further back-and-forth about whether the renter was trespassing, Salinda told Deputy Ballard, "[t]here's been no crime," and Ballard responded, "yes there has . . . if I get called . . . because there's somebody threatening somebody with an axe, that's assault and battery, so that is a crime." *Id.* at 6:45–53. Salinda stated there had been no assault, and Ballard said "Well, that's why I'm here . . . so give me an ID or you're going to jail for obstruction." *Id.* at 6:55–58. To this point the interaction had been mostly calm. But when Ballard reiterated, "do you want to go to jail for obstruction?" Salinda said "I'd like to see you try, my sir," then began to raise her voice, saying she was "quite familiar with [her] civil rights" and "you're not going to violate me." *Id.* at 6:58–7:14.

Deputy Summer Davis had then also arrived. After Deputy Ballard told her the house did not belong to the Hayeses, Salinda said they were in the process of buying it. Deputy Davis then told the Hayeses to "shut up." *Id.* at 7:25–30. Both Salinda and Anita Hayes objected to this, and as Deputy Davis moved closer, they told her to "back up." *Id.* at 7:36–38. Deputy Davis then told Salinda and Anita to "stop talking," and that they "need[ed] to leave because we're getting ready to arrest you." *Id.* at 7:36–40. Salinda said it was the deputies who should leave because they were on

4

private property. At that point, Ballard asked Deputy Davis "what are we going to arrest them for?" and she answered "obstruction." *Id.* at 7:41–45.

The deputies then acted to arrest the Hayeses. Deputy Ballard took hold of Salinda's wrist and instructed her to put her hands behind her back. She did not do so. While holding her arm, Deputy Ballard moved her away from the car. After shouting that he had swung her into Deputy Davis, Salinda fell. She landed on top of Davis, with Deputy Ballard above them both.

Lying underneath Salinda, Deputy Davis said to Ballard, "tase her, she's got my gun." *Id.* at 8:09–12. Salinda shouted, "I do not have a gun, I have no gun," *id.*, at 8:12–14, and Deputy Davis then unholstered her gun herself. Deputy Ballard placed his taser against Salinda's back and told her to "put your hands on the ground" and to "get off of [Deputy Davis]," warning "you will get tased." *Id.* at 8:22–25. Salinda moved somewhat but remained in contact with Deputy Davis. Deputy Ballard told her "you'd better let go of [Deputy Davis] or you are going to get [tased]." *Id.* at 8:31–35. Salinda continued shouting, including yelling that she had been kicked. Ballard again directed her to place her hands behind her back, saying, "I'm warning you to put your hands behind your back." *Id.* at. 8:50–54. Salinda did not do so and continued yelling. Deputy Ballard then tased her, after which she allowed herself to be handcuffed.

5

After Salinda was handcuffed, Deputy Davis also arrested Anita. The district court described this as follows:

> Deputy Davis walked over to Anita, took her phone, and grabbed her right arm to arrest her. Anita resisted and stated, "No ma'am, I've done nothing." Deputy Davis took Anita to the ground and attempted to handcuff her. Deputy Davis asked Anita to put her hands behind her back and warned Anita that she was going to tase her. Anita refused to comply with the order, so Deputy Davis told her "[the taser] really hurts. Please put your hands behind your back." But Anita continued to resist until Deputy Davis tased her. Deputy Davis was then able to place Anita in handcuffs. When Anita refused to stand up and walk to Deputy Davis's patrol car, Deputy Davis, Deputy Ballard, and another officer carried her over to the patrol car and placed her in the back seat.

App. III at 218–19. The Hayeses have not shown any material fact in this description is mis-stated or genuinely disputed.

The Hayeses were separately transported to the Washington County jail. On arrival, Anita did not cooperate with officers' direction to exit the vehicle, asking them to step away from her because they were unmasked. When she did not exit the vehicle or walk into the jail on her own, officers carried her into a holding cell and placed her lying face down on the floor, still handcuffed. The officers then emptied her pockets. They also forcibly removed her wedding ring, despite her objections and physical resistance to their doing so. During this process, Anita told officers they were hurting her and asked about receiving medical care. When she was released later that

day, Anita went to a hospital emergency room and had some x-rays taken, but she had no broken bones and left without accepting treatment.

## II

The Hayeses filed four lawsuits, which were eventually consolidated into a single action in federal district court. Of their claims, those that remain disputed in this appeal include: (1) that Deputies Ballard and Davis violated Salinda's and Anita's Fourth Amendment rights by using excessive force when arresting them; (2) the officers also used excessive force against Anita at the jail; (3) the jail officers were deliberately indifferent to Anita's serious medical needs; and (4) the Washington County Sherriff was liable for constitutional violations at the jail.

The district court granted defendants' motions for summary judgment and denied the Hayeses' Federal Rule of Civil Procedure 56(d) motion to defer ruling and allow additional discovery. The court rejected their excessive force claims because it found the undisputed facts showed the officers' use of force was objectively reasonable. It ruled against Anita's deliberate indifference claim based on a lack of evidence showing she was denied medical care or suffered medical harm. It also ruled all individual defendants were entitled to qualified immunity because the Hayeses had not addressed the applicable legal standards in response to the assertion of immunity. And because the Hayeses had not shown any constitutional

violation, the court also rejected their claims against the Sherriff. This timely appeal followed.

## III

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and genuinely disputed if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *id.* at 249.

We review the district court's ruling de novo, viewing the evidence and reasonable inferences in the light most favorable to the party opposing summary judgment. *See id.* at 255; *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000). "However, we review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." *Nelson*, 207 F.3d at 1205–06 (brackets and internal quotation marks omitted). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Id.* at 1206. "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or

8

statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* (internal quotation marks omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment." *Id.* (internal quotation marks omitted).

## IV

## A

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendments, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021). Claims arising during an investigatory stop or arrest arise under the Fourth Amendment, *id.*, while use of excessive force in pretrial detention implicates the Fourteenth Amendment, *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 978 F.3d 1165, 1171 (10th Cir. 2020).

To evaluate claims of excessive force during an arrest, we ask "'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Krueger v. Phillips*, 154 F.4th 1164, 1195 (10th Cir. 2025)*, cert. denied sub nom. Craig v. Krueger*, 146 S.Ct. 1807 (2026) *and Crockett v. Krueger*, 146 S.Ct. 1832 (2026) (quoting *Graham v. Connor*, 490

U.S. 386, 397 (1989)). "Reasonableness is evaluated under a totality of the circumstances approach" that requires consideration of three factors identified in *Graham*: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted) (brackets as in *Krueger*). "[T]he second *Graham* factor is undoubtedly the most important." *Id.* (internal quotation marks omitted).

"[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal quotation marks omitted). And we "'must consider all the relevant circumstances, including facts and events leading up to the climactic moment,' rather than just the 'moment-of-threat.'" *Id.* (quoting *Barnes v. Felix*, 605 U.S. 73, 76 (2025)). "There is no easy-to-apply legal test or on/off switch in this context. Rather, the Fourth Amendment requires . . . that a court slosh its way through a factbound morass." *Barnes*, 605 U.S. at 80 (brackets, citation, and internal quotation marks omitted).

We also evaluate claims of excessive force in pretrial detention using an objective reasonableness standard based on "the facts and circumstances of each particular case." *Rowell,* 978 F.3d at 1171 (internal quotation marks

10

omitted). Our "analysis must account for the 'legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). In *Kingsley* the Supreme Court identified several illustrative, non-exclusive factors relevant to whether a use of force in pretrial detention was reasonable. *See* 576 U.S. at 397.[3]

**B**

Addressing the use of force during the Hayeses' arrest, the district court concluded "[b]ased on the *Graham* factors. . . , a jury could not reasonably conclude that the Deputies' use of force was clearly unreasonable." App. III at 231. The Hayeses – whose briefs rarely cite record evidence to support their arguments – have shown no reversible error in that ruling.

---

[3] These factors include: "(1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) any effort made by the officer to temper or to limit the amount of force, (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting." *Rowell*, 978 F.3d at 1171 (line breaks omitted) (quoting *Kingsley*, 576 U.S. at 397).

11

The district court reasoned the first *Graham* factor supported the use of force because the deputies were investigating a felony assault and battery, namely the report of a threat with an axe. *See Krueger*, 154 F.4th at 1199 (holding the first *Graham* factor supported the use of force where officers "reasonably suspect[ed] [the plaintiff] of [felony] assault and battery," as "[o]ur binding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony" (internal quotation marks omitted)).

Appellants resist this conclusion, emphasizing that they were arrested only for the non-violent misdemeanor of obstruction. But as the district court explained, "[a]lthough [they] were only *arrested* for obstruction . . . Deputy Ballard was *investigating* felony assault and battery with an axe, a crime involving violent conduct." App. III at 229 (emphasis added). The Hayeses fail to address or challenge that reasoning. Nor do they address *Andersen v. DelCore*, 79 F.4th 1153 (10th Cir. 2023), on which the district court relied. In *Andersen*, as here, the plaintiff was arrested and charged only for obstruction, but we concluded the "crime at issue" under the first *Graham* factor also encompassed "the far more serious crime" officers had been investigating (there, child abuse). *Id.* at 1164. The same reasoning applies here.

12

On the second *Graham* factor, the district court concluded the Hayeses "posed a moderate threat to the deputies and others at the house." App. III at 229. It observed they "were hostile and refused to answer Deputy Ballard's questions;" they also "refused [the deputies'] orders to provide identification or leave;" the deputies had not located the axe reported to be at the scene; and the Hayeses were seated in and standing next to their car, where a weapon could be hidden. *Id.* at 229–30.[4] Relying on our holding that "an officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer," *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020), the district court concluded the second *Graham* factor supported the deputies' use of force.

The Hayeses again show no reversible error in that conclusion. Despite the district court's reliance on *Donahue*, they do not cite or address that case in their briefs. Although they emphasize that they were not holding or brandishing a weapon, they do not dispute that the deputies had reason to suspect they had a weapon within reach. The undisputed facts also show they "repeatedly ignore[d] police commands," *Donahue*, 948 F.3d

---

[4] In fact, although Salinda twice told Deputy Ballard there was "no axe," she had used a hatchet to nail a board on the house shortly before he arrived and the hatchet was later found under the front passenger seat where Anita had been sitting.

at 1196, both by not providing identification when asked and by physically resisting efforts to handcuff and arrest them.

The Hayeses assert there is "a material dispute as to whether [they] posed any credible threat," and "conflicting testimony regarding any threatening conduct during the encounter." Aplt. Op. Br. at 10. However, they fail to cite any record evidence to support these claims. Although we view the evidence and inferences in their favor, their own "unsupported conclusory allegations do not create a genuine issue of fact." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (internal quotation marks omitted). Absent citations to evidence which could lead a jury to rule in their favor, their opening brief fails to carry their burden on appeal. *See United States v. Rodriguez-Aguirre,* 108 F.3d 1228, 1237 n. 8 (10th Cir.1997) ("In the absence of essential references to the record in a party's brief, the court will not sift through the record to find support for the claimant's arguments." (internal quotation marks omitted)); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring the appellant to provide "citations to the . . . parts of the record on which [she] relies"); Fed. R. Civ. P. 56(c)(1)(A) (requiring parties asserting a fact is genuinely disputed to cite to "particular parts of materials in the record").

The undisputed facts also support the district court's conclusion that the third *Graham* factor supports the deputies' use of force. The Hayeses do

14

not dispute that Salinda was "actively resisting arrest and refusing commands" and that Deputy Ballard "only used his taser after [she] continued to refuse to comply." Supp. App. at 125; *see also* App. II at 80 (admitting defendants' statement of these facts as undisputed). Similarly, Anita acknowledged that she "refus[ed] compliance" with Deputy Davis's direction to place her hands behind her back, that Deputy Davis warned she would be tased if she did not comply, and that she continued to not comply even after the first time she was tased. Supp. App. at 125; *see also* App. II at 80. On this record, we agree with the district court that the third *Graham* factor supports the deputies' use of force. *See Andersen*, 79 F.4th at 1168 ("When a person resists arrest – say, by swinging his arms in the officer's direction, balling up, and refusing to comply with verbal commands – the officers can use the amount of force necessary to ensure submission." (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 643 (6th Cir. 2015)).

Challenging that conclusion, the Hayeses claim the deputies unconstitutionally used force even after they were restrained. But the record does not support their argument. To the contrary, there is no genuine dispute that Salinda and Anita both continued to resist arrest even after they were on the ground, refusing directions to place their hands behind their backs, and physically resisting efforts to handcuff them. Because they were not yet restrained, but were instead "resist[ing] th[e] initial use of

15

force" to *avoid* being restrained, it was not objectively unreasonable for the deputies to use "a greater degree of force than would have initially been appropriate to subdue [them], obtain peace, and ensure that the officers had control over the situation." *Andersen*, 79 F.4th at 1168.

We are also unpersuaded by the Hayeses' argument that a jury could find a Fourth Amendment violation because Deputy Davis "allegedly manipulated vehicle heat and played loud music" while Anita was in the backseat of a patrol vehicle following her arrest. Aplt. Op. Br. at 12. They argue this "concerning treatment" is part of the "complete sequence of events" we must consider under *Barnes*. *Id*. *Barnes*, which addressed a use of deadly force, held the Fourth Amendment analysis is not limited to "the circumstances existing at the precise time an officer perceived [a] threat." 605 U.S. at 76 (internal quotation marks omitted). It instructs that courts must instead "consider all the relevant circumstances, including facts and events leading up to the climactic moment." *Id*. But the Hayeses cite no authority explaining why events that occurred *after* the use of force was already complete can show an otherwise reasonable use of force was unconstitutional. And even if we might agree with them that some of the deputies' conduct and statements escalated the situation by being unnecessarily condescending or disrespectful, an officer's subjective state of mind does not make an otherwise reasonable use of force unconstitutional.

16

*See Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force.").

Last, on Anita's claim of excessive force at the jail, the district court reviewed the *Kingsley* factors and concluded the use of force had been objectively reasonable. *See* App. III at 234–35. The Hayeses do not cite or address the *Kingsley* factors. Because they have not meaningfully developed any argument under the applicable law, they offer no reason for us to reverse on this claim. *See Meek v. Martin*, 74 F.4th 1223, 1276 (10th Cir. 2023) ("[W]e cannot make arguments for an appellant. Instead, it is the appellant's first task to explain to us why the district court's decision was wrong." (citation, internal quotation marks, and ellipsis omitted)).

## V

Anita's claim that jail officers were deliberately indifferent to her medical needs in detention arises under the Fourteenth Amendment. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023). To prevail, she must first show she had a "sufficiently serious" medical need, meaning "one that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). Second, she must also show officers "kn[ew] of and

17

disregard[ed] an excessive risk to [her] health or safety." *Id.* (internal quotation marks omitted).

The district court granted summary judgment, citing a lack of evidence to show either that the officers had delayed or refused medical care or that any delay caused Anita harm. It noted she sought medical attention after she was released but declined treatment, and that she had "point[ed] to no evidence that any of [her medical] conditions worsened because of a delay in medical treatment, or that she suffered unnecessary pain." App. III at 233.

The Hayeses again have not shown any error in the district court's ruling. They argue Anita's "untreated pain and ignored symptoms constitute actionable harm," even with no permanent injury. Aplt. Op. Br. at 15. However, "[a] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1268 (10th Cir. 2022) (internal quotation marks omitted). The Hayeses identify no evidence to show Anita suffered substantial harm. Their opening brief only cites to a several-page section of a district court order summarizing allegations in the Hayeses' own complaint. *See* Aplt. Op. Br. at 15 (citing App. I at 46–52). But neither the court's order nor the complaint provides evidence that can show a genuine dispute of fact. *See* Fed. R. Civ. P.

18

56(c)(1)(A); *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1150–51 (10th Cir. 2006) ("At the summary judgment stage, merely pointing to an unsworn complaint is not enough.").[5]

## VI

The Hayeses' claims against the Sheriff in his official capacity must also fail because they have not shown any underlying violation of their constitutional rights. "Under *Monell* [*v. Department of Social Services*, 436 U.S. 658 (1978)], a § 1983 claim against a [County] officer in his or her official capacity is a claim against the [County] itself." *Emmett v. Armstrong*, 973 F.3d 1127, 1139 (10th Cir. 2020). And, "[w]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation . . . [that finding] precludes the imposition of municipal liability." *Id.* (internal quotation marks omitted). Thus, as the Hayeses themselves concede, "*Monell* liability cannot salvage claims where no underlying constitutional violation occurred." Aplt. Op. Br. at 19.

---

[5] The Hayeses' reply brief also cites and relies on a declaration offered by Anita. This does not satisfy Federal Rule of Appellate Procedure 28(a)(8)(A), and we generally decline to consider arguments based on evidence that "is not cited until the reply brief." *Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009); *see also James*, 724 F.3d at 1315 (stating "unsupported conclusory allegations" offered by a party opposing summary judgment "do not create a genuine issue of fact").

## VII

Finally, the Hayeses challenge a magistrate judge's denial of their Rule 56(d) motion to defer summary judgment and allow additional discovery. However, they did not object to the magistrate judge's order in district court. *See* Fed. R. Civ. P. 72(a). So under this court's firm waiver rule, we will not review the magistrate judge's ruling. *See Luo v. Wang*, 71 F.4th 1289, 1297 (10th Cir. 2023) (stating that under the firm waiver rule, "appellate arguments not raised in objections to a magistrate judge's order are waived," and this rule "applies to a magistrate judge's non-dispositive ruling[s]" (internal quotation marks omitted)). No exception to that rule applies in this case.

AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge

20